**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **JEROME OWENS,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **vs.** | )    **Case number 4:03cv0477 TCM** |
| | ) |
| **DON ROPER and** | ) |
| **JEREMIAH W. NIXON,**[1] | ) |
| | ) |
| **Respondents.** | ) |

## MEMORANDUM AND ORDER

The 28 U.S.C. § 2254 petition of Jerome Owens, a Missouri prisoner, for federal habeas corpus relief is before the undersigned, pursuant to the parties' written consent, for a final disposition. <u>See</u> 28 U.S.C. § 636(c).

## Background

Jerome Owens ("Petitioner") and James Ward were indicted in March 1998 on one count of first degree murder, one count of first degree assault, and two counts of armed criminal action. (Resp. Ex. 2 at 8-9.) Shortly thereafter, Petitioner's trial counsel filed a request for discovery, including a request for any objects the State intended to introduce into evidence that belonged to Petitioner and any exculpatory or mitigating material or information within the State's possession or control. (<u>Id.</u> at 17-18.)

---

[1]Because Petitioner is challenging a sentence to be served in the future, the Attorney General of Missouri, Jeremiah W. "Jay" Nixon, is hereby added as a proper party respondent. <u>See</u> Rule 2(b), Rules Governing Section 2254 in the United States District Courts.

In May 1999, Petitioner and Ward were tried by a jury on the four felony counts. (Resp. Ex. 1.) Marrell Withers, the victim of the assault charge, was the first witness to testify. (<u>Id.</u> at 313.) In January 1998, Withers was living with his childhood friend, Patrick Benford, at Benford's house. (<u>Id.</u> at 314.) Approximately one week before the shootings, Withers was on the sidewalk outside the house of Marvin "Little Man" Owens ("Marvin"); Marvin and Kory Robinson were inside the fence. (<u>Id.</u> at 321.) Marvin and Withers were not friends; Marvin and Robinson were. (<u>Id.</u> at 318.) Withers asked Robinson for a girl's telephone number and for a cigarette. (<u>Id.</u> at 322.) Marvin told Withers to get away from his fence and if he did not get away, the next time he was told to do so it would be with shots. (<u>Id.</u> at 323.) Withers did not know why Marvin was so upset. (<u>Id.</u> at 324.) He told Marvin to forget it and walked away. (<u>Id.</u>)

On January 7, Withers and his girlfriend, Sharonda, were at Benford's house. (<u>Id.</u> at 325.) Withers left to walk Sharonda to the bus station a five- minute walk away. (<u>Id.</u> at 326.) He and Sharonda saw Marvin and Robinson there. (<u>Id.</u>) Withers and Marvin had another argument, with both cussing and ready to fight. (<u>Id.</u> at 326-27.) Robinson stepped between the two men and stopped the fight. (<u>Id.</u> at 328.) Withers and Sharonda then returned to Benford's house. (<u>Id.</u>) Approximately thirty minutes later, Withers and Sharonda again walked to the bus station. (<u>Id.</u> at 331.) After Sharonda got on the bus, Withers started walking back to Benford's house. (<u>Id.</u> at 331.) Benford met him at the community center near the bus station, and the two men started walking back together. (<u>Id.</u> at 332, 368.) Between the community center and Benford's house were two basketball

courts surrounded by a tall fence with two entrances and known as the "Cage." (Id. at 332-33.) It was getting dark and it was raining so Benford and Withers decided to cut across the Cage for a shortcut. (Id. at 333.) Once inside, they saw Marvin and Robinson come into the Cage from the other entrance. (Id. at 333-34.) A third man walked around the Cage and came through the same entrance Withers and Benford had used. (Id. at 334.) The men met in the middle of the Cage. (Id. at 335.) Withers did not have any weapons and did not see any on Benford, Marvin, or Robinson. (Id. at 337-38.) Approximately two minutes later, another man entered through the entrance used by Marvin and Robinson. (Id. at 335-36.) This fourth man, identified by Withers at trial as Petitioner, asked Marvin, "which one is it?" (Id. at 336, 338, 369.) Marvin pointed at Withers. (Id.) Petitioner pulled out a gun and started shooting. (Id. at 339, 370, 394.) Withers thought the gun was a revolver. (Id. at 339-40, 370.) A bullet grazed Withers' neck. (Id. at 341, 370.) Withers started running around the Cage in circles. (Id. at 341, 371.) Additionally, the other man, identified at trial by Withers as Ward, started shooting at Withers with a chrome-colored gun. (Id. at 342-43, 371, 373.) Both Petitioner and Ward shot at Withers as he ran. (Id. at 372.) Benford was laying where he had been standing. (Id. at 341, 371, 395.) Petitioner was the first to start shooting. (Id. at 343.) Withers was eventually able to get out of the Cage. (Id. at 373.) He ran to a house and called the police. (Id. at 374.) He later identified Petitioner and Ward in separate line-ups. (Id. at 376-77.)

During the direct examination of Withers, the trial was adjourned for the day. (Id. at 344.) Before trial resumed the next morning, the subject of a police report generated

- 3 -

after the grand jury had met was discussed.  (Id. at 345.)  The prosecutor disclosed that a detective who had worked on the case, Ken Adkins, had referred to this report at lunch the previous day.  (Id.)  This report had not been previously referred to and had not been forwarded to the prosecutor's office.  (Id. at 345-46.)  After receiving this report, the prosecutor directed an investigator to run all the reports.  (Id. at 349.)  That afternoon, she informed the prosecutor of another report he had not seen.  (Id. at 350.)  This second report noted that Detective Adkins had searched Petitioner's house, with his mother's consent, on January 15, 1998, and had seized a Michigan jacket.  (Id. at 350.)  The prosecutor informed the court that neither Robinson nor Withers remembered when giving their respective depositions what Petitioner was wearing that night and neither could identify the Michigan jacket as one that was worn by Petitioner.  (Id.)  The prosecutor also informed the court that after he had entered his appearance he had sent both Petitioner's counsel and Ward's counsel a letter saying that the State's evidence was always available for their inspection.  (Id. at 351.)  Stating that he had disclosed the reports as soon as he became aware of them and that the State was not going to introduce the Michigan jacket, the prosecutor argued that Petitioner and Ward had not been harmed by the late disclosure. (Id.)  Petitioner's trial counsel disagreed, stating that she would have sent the jacket to a laboratory to be examined had she known about it.  (Id. at 355.)  She requested a mistrial. (Id. at 356.)  Her request was denied.  (Id. at 363.)

Kory Robinson was the next witness to testify.  He had known Withers and Marvin for approximately three years.  (Id. at 481-82.)  He testified he was with Marvin in

Marvin's front yard one day when Withers asked for a cigarette. (Id. at 486.) Marvin told Withers to leave. (Id.) After an exchange of words, with Marvin doing most of the talking, Withers left. (Id. at 487.) At a later time, he was present when Withers and Marvin again exchanged words. (Id. at 487-88.) A girl was also present. (Id. at 487.) The girl was trying to hold Withers back and Robinson was between the two men. (Id. at 489.) The argument ended when Withers walked towards Benford's house and Marvin walked the other direction. (Id. at 490.) Robinson went with Marvin. (Id.) Marvin went into his house to page his brother, Petitioner. (Id. at 490-91.) Robinson stayed outside. (Id. at 491.) A few minutes after Marvin came back outside, Petitioner and another man pulled up in a brown car. (Id. at 491-92.) Marvin told his brother that Withers had said he was going to shoot everybody in Marvin's house. (Id. at 493.) Marvin and Robinson went to the basketball courts, with Petitioner walking behind them. (Id. at 496-97.) Marvin and Robinson went inside the basketball courts and saw Withers and Benford coming in through the other entrance. (Id. at 498-99.) The four met in the middle. (Id. at 499.) Marvin and Withers started arguing again. (Id. at 499.) Approximately five minutes later, Petitioner walked in through the same entrance Robinson and Marvin had used. (Id. at 500.) The other man, identified at trial by Robinson as Ward, came in through the other entrance. (Id. at 500-01.) Petitioner asked Marvin which one was making the threats; Marvin pointed at Withers. (Id. at 502, 519.) The next thing Robinson heard was a gunshot. (Id. at 503, 519.) He looked down and saw a chrome-colored revolver in Petitioner's hand. (Id. at 504.) Petitioner was pointing the gun at Benford.

(Id.)  Then, Ward started shooting at Withers as Withers ran around the court.  (Id. at 505.)

Benford never moved from the spot where he had been standing.  (Id. at 505.)  The last

Robinson saw of Withers was when Petitioner and Ward had him pinned up against the

fence.  (Id. at 506.)  Robinson left and called the police.  (Id. at 507.)

     Detective Adkins testified about the identification procedures used.  (Id. at 551-59.)

     Margaret Owens, a chemist with the City of St. Louis Police Department, testified

that she had analyzed a black leather jacket, a blue shirt, and a black and red baseball cap,

clothing worn by Benford.  (Id. at 578.)  In addition to identifying holes in the clothing,

she had examined each piece of clothing for gun powder particles, lead residue, and

nitrates.  (Id. at 580-81.)  From this examination she concluded that the muzzle of the

firearm was at a distance of three feet or greater from the jacket.  (Id. at 583-84.)  Jane

Turner, M.D., a forensic pathologist with the St. Louis City Medical Examiner's Officer,

testified that Benford died from a gunshot wound to his head.  (Id. at 610.)  A gunshot

wound to his right chest could also have killed him.  (Id. at 610-11.)

     After Dr. Turner's testimony, the State rested.  (Id. at 631.)  After unsuccessfully

moving for a judgment of acquittal, Petitioner rested.  (Id. at 632-33.)

     In his closing argument, the prosecutor spoke of the responsibility of both Ward and

Petitioner for the death of Benford and the wounding of Withers.  (Id. at 653-62.)  He also

spoke of the identification of both men as the assailants, including an argument that:

         How do you know it's James Ward out there?  It's [Marvin's] uncle.
    Okay.  Kory [Robinson] tells you – Marrell [Withers] picks him out one

hundred percent positive.  Marrell picks him out.  Just like Marrell is sure with [Petitioner], he's sure with James Ward. . . .

I suspect that one of the defendants' argument will be they pick out James Ward because he's in the <u>Evening Whirl</u>, okay? . . .

How do you think that information about him [Ward] got in the paper with his name, okay?  There is [sic] three eyewitnesses to this.  There is Kory who doesn't know his name.  There is Marrell who doesn't know his name and there is Little Man [Marvin].

(<u>Id.</u> at 662-64.)  At this point, Ward's counsel objected and asked for a mistrial on the grounds that the prosecutor had implicitly told the jury that Marvin had given a statement to police that Ward had committed the crime and Marvin was not there to be cross-examined about his original "I don't know" statement.  (<u>Id.</u> at 664-65.)  The court sustained the objection, overruled the request for a mistrial, declined to instruct the jury to disregard the prosecutor's statement, and admonished the prosecutor to make no further argument about the <u>Evening Whirl</u>.  (<u>Id.</u> at 670.)  The jury was instructed that, inter alia, the closing arguments of the attorneys were not evidence.  (Resp. Ex. 2 at 85.)

One hour after retiring to deliberate, the jury had a question.  (<u>Id.</u> at 100-01.)  At the end of the next day, the jury returned a verdict of guilty against Petitioner and Ward on each of the four felonies.  (Resp. Ex. 1 at 715.)  Six weeks later, Petitioner was sentenced as a prior offender to life imprisonment without the possibility of parole on the murder charge, a concurrent term of thirty years imprisonment on the companion armed criminal action charge, a consecutive term of fifteen years imprisonment on the assault charge, and

a concurrent term of fifteen years imprisonment on the companion armed criminal action charge.  (Id. at 722-23; Resp. Ex. 2 at 100.)

Petitioner appealed, arguing that the trial court erred in (1) denying his motion for a mistrial when the State failed to timely disclose the two police reports, including the one indicating that a Michigan jacket had been seized, and (2) overruling his Batson[2] challenge to the removal of venireperson Jones.  (Resp. Ex. 3.)  Both arguments were found to be without merit in a one-paragraph, unpublished per curiam order.  (Resp. Ex. 5.)

Petitioner then moved for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15.  (Resp. Ex. 6 at 2-12.)  His motion, amended by counsel, sought such relief on the grounds that, inter alia, trial counsel "was ineffective in failing to object and offer a more proper alternative to the court's response to the jury's inquiry regarding whether they could take into account the fact that Marvin Owens did not testify."  (Id. at 18.)  The court's response had been that the jury was to be guided by the instructions.  (Id. at 23.)  Petitioner argued the response should have been that the jury's "decision must be based on the evidence before them and not on speculation of what some other person might or might not have said had they testified at trial."  (Id. at 23-24.)  Petitioner further argued that trial and appellate counsel were both ineffective for failing to object to and brief as plain error, respectively, the trial court's error in denying a request for mistrial after the prosecutor inferred or implied that Marvin had made certain statements incriminating Ward.  (Id. at 25-26.)

---

[2] Batson v. Kentucky, 476 U.S. 79 (1986).

Petitioner's motion was denied without an evidentiary hearing. (Id. at 29-34.) The court found, in relevant part, that (1) its response to the jury's question was in accordance with Missouri Approved Instruction-Criminal 3rd 302.01 and that Petitioner suffered no prejudice from the rejection of his proffered alternative and (2) "the reference to a newspaper article and the brief suggestion that Marvin Owens may have been the source, could not have had a decisive impact on the outcome of the case." (Id. at 32-33.)

Petitioner appealed on the two grounds cited above. (Resp. Ex. 7.) His appeal was denied in a two-paragraph, unpublished per curiam order. (Resp. Ex. 9.)

Petitioner now seeks habeas relief on the grounds that (1) the trial court's refusal to declare a mistrial or to at least grant a continuance based on the late disclosure of the two police reports denied him due process and violated Brady v. Maryland, 373 U.S. 83 (1963), because the Michigan jacket was identified as being worn by Petitioner when Benford was shot and could have been tested for gun powder residue, blood, or human tissue had its seizure been timely disclosed; (2) his trial counsel was ineffective for failing to request a continuance to have the jacket examined[3]; (3) his appellate counsel was ineffective for failing to brief the trial court's error in refusing to grant a mistrial or admonish the jury after the prosecutor referred in his closing argument to statements by Marvin Owens although there was no evidence of such statements; and (4) his trial counsel was ineffective for not requesting that the trial court give a proper response to the

_____

[3]This claim is not presented as a separate ground for relief. It is included in the first ground. For ease of reference, the Court will designate it as ground two.

jury's question about Marvin Owens not testifying.  Respondent contends that the second

ground is procedurally barred and the remaining three are without merit.

<u>Discussion</u>

<u>Standard of Review.</u>  Title 28 U.S.C. § 2254(d) mandates that a federal court "not

grant habeas relief on a claim that was adjudicated on the merits in state court unless 'it

resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United

States,'" **James v. Bowersox**, 187 F.3d 866, 869 (8th Cir. 1999) (quoting § 2254(d)(1)),

or it "'resulted in a decision that was based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceeding,'" **Evans v.  Rogerson**, 223

F.3d 869, 871 (8th Cir. 2000) (quoting § 2254(d)(2)).  <u>See also</u> **Weaver v. Bowersox**, 241

F.3d 1024, 1029 (8th Cir. 2001) ("Section 2254(d) distinguishes between two types of

erroneous decisions – those of law and those of fact[.]").

The "contrary to" clause and the "unreasonable application" clause have independent

meanings.  **Williams v. Taylor**, 529 U.S. 362, 405 (2000).  "[A] state court decision is

'contrary to [the Supreme Court's] clearly established precedent if the state court applies

a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state

court confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme Court] and nevertheless arrives at a result different from [their] precedent.'"

**Lockyer v. Andrade**, 538 U.S. 63, 73 (2003) (quoting <u>Williams</u>, 529 U.S. at 405-06)

(alterations added).  "On the other hand, a run-of-the-mill state-court decision applying

the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." **Williams**, 529 U.S. at 406 (alteration added). Thus, a state court decision that correctly identifies the controlling legal authority and, applying that authority, rejects a prisoner's claim does not fit within the "contrary to" clause although it might be contrary to a federal court's conception of how that authority ought to be applied in that particular case. **Id.**

Such a state court decision can, however, fit within the "unreasonable application" clause. **Id.** at 407-08. "[W]hen a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's 'unreasonable application' clause." **Id.** at 409 (alterations added). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." **Id.** (alteration added). When making this inquiry, a federal habeas court should note that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." **Id.** at 410. "It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." **Lockyer**, 538 U.S. at 75 (internal quotations omitted). And, "'[t]o the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness . . . of the state court's treatment of the contested issue.'" **Copeland v. Washington**, 232 F.3d 969, 974 (8th Cir. 2000) (quoting <u>Long v. Humphrey</u>,

184 F.3d 758, 761 (8th Cir. 1999)) (alterations in original).  Additionally, "the [state courts'] 'summary nature' of the discussion of [a] federal constitutional question does not preclude application of the AEDPA standard." **Brown v. Luebbers**, 371 F.3d 458, 462 (8th Cir. 2004) (alterations added).

Ground One:  Brady Violation.  It is well established that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." **Brady**, 373 U.S. at 87.  See also **Banks v. Dretke**, 540 U.S. 668, 691 (2004); **Strickler v. Greene**, 527 U.S. 263, 280 (1999).  "Brady applies to exculpatory and impeachment evidence, whether or not the accused has specifically requested the information." **Liggins v. Burger**, 422 F.3d 642, 651 (8th Cir. 2005) (interim citation omitted).  "Evidence favorable to the accused is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" **Id.** (quoting Kyles v. Whitley, 514 U.S. 419, 433-34 (1995)).  "'The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" **Id.** (quoting Kyles, 514 U.S. at 434).  "'[M]ateriality is not established by the mere possibility that the withheld evidence may have influenced the jury[,]'" **Clay v. Bowersox**, 367 F.3d 993, 1003 (8th Cir. 2004) (quoting United States v. Jones, 160 F.3d 473, 479 (8th Cir. 1998)) (alterations added); however, "[a] prisoner need not prove he would have been acquitted

in order to demonstrate materiality[,]" **Burton v. Dormire**, 295 F.3d 839, 846 (8th Cir. 2002) (alterations added).

Additionally, Brady is not violated when the evidence at issue is available to the defense from other sources or is already in the defendant's possession. **United States v. Wilson**, 102 F.3d 968, 971 (8th Cir. 1996). Accord **Liggins**, 422 F.3d at 655 (holding that Brady applies to information exclusively within the prosecutor's control and knowledge and rejecting Brady claim based on videotape of victim's funeral that was widely disseminated and equally available to defense). And, a Brady violation does not result in the reversal of a conviction "if the violation was not prejudicial and amounted to harmless error." **United States v. Greatwalker**, 356 F.3d 908, 912 (8th Cir. 2004).

Petitioner argues that the delayed disclosure of the two police reports violated Brady because (a) witnesses testified he was wearing a blue and gold jacket, the colors of the Michigan jacket, the day of the shootings and (b) had he known of the seizure of the jacket he could have had it tested for evidence the absence of which would have been exculpatory. This argument fails for several reasons. First, the police reports were disclosed during the first day of trial and the first witness's testimony. "'Where the prosecution delays disclosure of evidence, but the evidence is nonetheless disclosed during the trial, Brady is not violated.'" **Wilson**, 102 F.3d at 971 (quoting United States v. Gonzales, 90 F.3d 1363, 1368 (8th Cir. 1996)). Second, no witness testified that Petitioner was wearing a blue and gold jacket the day of the shootings, and the chemist testified that the nuzzle of the gun was at least three feet away from Benford. Thus, the

absence of any gun powder residue, blood, or human tissue on the jacket would not have been exculpatory. See **Clay**, 367 F.3d at 1003 (a "mere possibility that the withheld evidence may have influenced the jury" is insufficient to establish the necessary materiality for a Brady claim) (interim quotations omitted). Third, it was his jacket seized from his house with his mother's consent, and the prosecutor had an open file policy; thus, Petitioner has failed to show that he could not have, with due diligence, discovered the jacket. See **Johns v. Bowersox**, 203 F.3d 538, 545 (8th Cir. 2000) (holding that there can be no suppression when the defendant (a) "could have learned of the information through reasonable diligence" and (b) had equal access to the information) (interim quotations omitted).

Ground Two: Ineffective Assistance of Trial Counsel (the Jacket). Petitioner further argues that his trial counsel was ineffective for failing to request a continuance to have the jacket examined. This ground was not raised in his Rule 29.15 motion or in the appeal after the motion was denied.[4]

Title 28 U.S.C. § 2254(b)(1)(A) and the Supreme Court bar the granting of habeas corpus relief unless it appears that the state prisoner has exhausted available state court remedies. See **Gray v. Netherland**, 518 U.S. 152, 161 (1996); **Coleman v. Thompson**, 501 U.S. 722, 730 (1991). "Because 'it would be unseemly in our dual system of

---

[4]Petitioner might argue that his presentation of his Brady claim to the state court subsumed his related ineffective assistance of counsel claim. This argument would be unavailing. A federal habeas claim must be "fairly presented" to the state courts to avoid a procedural default. See **Cox v. Burger**, 398 F.3d 1025, 1031 (8th Cir.2005). Presenting a claim that is "merely similar" to the federal habeas claim is insufficient. **Id.**

government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation,' federal courts apply the doctrine of comity, which 'teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.'" **Id.** at 731 (quoting Rose v. Lundy, 455 U.S. 509, 518 (1982)). See also **Weeks v. Bowersox**, 119 F.3d 1342, 1349-50 (8th Cir. 1997) ("Requiring the exhaustion of state remedies both allows the states to correct any possible constitutional violations without unnecessary intrusion by the federal courts and allows the state courts to create a factual record should the matter proceed to federal court."). "A habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." **Coleman**, 501 U.S. at 732.

In Missouri, claims of ineffective assistance of trial counsel must be presented in a Rule 29.15 motion if the challenged conviction followed a jury trial and in the appeal from a denial of the motion. See Mo.S.Ct.R. 29.15; **Osborne v. Purkett**, 411 F.3d 911, 919 (8th Cir. 2005). Thus, Petitioner has met the technical requirement for exhaustion of his second, ineffective assistance of trial counsel claim.

In order to preclude habeas petitioners from avoiding the exhaustion requirement and to "ensure[] that the States' interest in correcting their own mistakes is respected in all federal habeas cases," **Coleman**, 501 U.S. at 732 (alteration added), the state procedural bar that gives rise to a habeas petitioner having technically satisfied the exhaustion requirement provides an independent and adequate state-law ground for the petitioner's conviction, **id.** at 730; **Gray**, 518 U.S. at 162. This independent and adequate state law ground prevents federal habeas review of a defaulted claim unless the petitioner can show cause and prejudice for his default. **Id.**; **Coleman**, 501 U.S. at 748. See also **Miller v. Lock**, 108 F.3d 868, 871 (8th Cir. 1997) ("The failure to file a timely motion for post-conviction relief in the state court is a procedural default that will bar habeas review absent cause and prejudice." (interim quotations omitted)).

There is no exhaustive catalog of the objective impediments nor have the precise contours of the cause requirement been clearly defined. **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999). "At a minimum, however, [Petitioner] must show that 'something external to [him], something that cannot fairly be attributed to him,' caused the procedural default." **Id.** (quoting Coleman, 501 U.S. at 753) (first alteration added, second in original). Petitioner fails to allege any cause for his procedural default.[5] It is, therefore,

---

[5]Indeed, in his traverse, Petitioner states that he did not present a claim of ineffective assistance of trial counsel for not requesting a continuance to have the jacket examined. Such a claim is, however, clearly included in his Brady argument. See note 3, supra.

unnecessary to consider whether he has demonstrated prejudice.  See **Lee v. Kemna**, 213 F.3d 1037, 1039 (8th Cir. 2000); **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996).

As noted above, Petitioner's defaulted ground might be reached on its merits absent a showing of cause for his procedural default if he establishes that a failure to do so will result in a fundamental miscarriage of justice.  See **Forest v. Delo**, 52 F.3d 716, 719 (8th Cir. 1995); **Flieger v. Delo**, 16 F.3d 878, 885 (8th Cir. 1994).  The fundamental miscarriage of justice exception is applicable "when a petitioner makes a showing, based on new evidence, that a 'constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  **Brownlow v. Groose**, 66 F.3d 997, 999 (8th Cir. 1995).  "The actual innocence exception is concerned with claims of actual, not legal, innocence." **Pitts v. Norris**, 85 F.3d 348, 350 (8th Cir. 1996).  Petitioner makes no showing, based on new evidence,[6] that he is actually innocent.

For the foregoing reasons, Petitioner's second ground is without merit.

Ground Three:  Ineffective Assistance of Appellate Counsel.  Petitioner next argues he was denied the effective assistance of appellate counsel when counsel failed to brief as error the trial court's refusal to admonish the jury to disregard the closing comments about Marvin Owens by the prosecutor and to grant a mistrial on the basis of such comments.

---

[6]His request to have the jacket tested is discussed below.

It is well established that the Sixth Amendment guarantees the right to effective assistance of counsel on direct appeal.  See **Douglas v. California,** 372 U.S. 353, 358 (1963).  To succeed on a claim of ineffectiveness of counsel on direct appeal, however, Petitioner must show, first, that appellate counsel's performance was below the reasonable standard of competence and, second, a reasonable probability that the result would have been different absent this deficient performance.  See **Strickland v. Washington,** 466 U.S. 668, 687 (1984); **Gee v. Groose**, 110 F.3d 1346, 1352 (8th Cir. 1997).  Appellate counsel is expected to winnow the issues on appeal to highlight the most meritorious issues and eliminate the sure losers.  See **Jones v. Barnes,** 463 U.S. 745, 751-752 (1983); **Gee**, 110 F.3d at 1352; **Pollard v. Delo**, 28 F.3d 887, 889 (8th Cir. 1994).  Appellate counsel has no duty to raise every nonfrivolous claim on appeal.  **Reese v. Delo**, 94 F.3d 1177, 1185 (8th Cir. 1996).  See also **Parker v. Bowersox**, 94 F.3d 458, 462 (8th Cir. 1996) ("To perform competently under the Sixth Amendment, counsel is neither required nor even advised to raise every conceivable issue on appeal.").  Thus, an attorney's decision not to raise an unwinnable issue on appeal is an important strategic decision in competent appellate advocacy and does not constitute ineffective assistance of counsel.  See **Jones**, 463 U.S. at 751-52; **Horne v. Tricky,** 895 F.2d 497, 500 (8th Cir. 1990).

At the heart of Petitioner's claim of ineffective assistance of appellate counsel are the prosecutor's references to Marvin Owens being the only man present, excluding the two defendants, who could identify Ward, Petitioner's co-defendant.  The trial court sustained Ward's counsel's objections to the references, but declined his request to

admonish the jury to disregard the references, explaining that such an admonishment would emphasize the references, and his request for a mistrial. The jury was instructed that the closing arguments of counsel were not evidence. In Missouri, "[j]urors are presumed to have followed the instructions given by the trial court." **State v. Biggs**, 170 S.W.3d 498, 507 (Mo.Ct.App. 2005) (alteration added). "Consequently, any error in the [prosecutor's] argument is presumptively cured by the instructions." **Id.** (alteration added). See also **United States v. Gardner**, 396 F.3d 987, 993 (8th Cir. 2005) ("'The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process.'") (quoting Richardson v. Marsh, 481 U.S. 200, 211 (1987)); **Feingold v. United States**, 49 F.3d 437, 439 (8th Cir. 1995) (concluding that there was no prosecutorial misconduct where prosecutor's remarks during closing argument touched on the credibility of witnesses and argued that the defendant was guilty and where the jury was properly instructed that closing arguments are not evidence). Moreover, the complained-of remarks were isolated and were not, in accordance with the trial court's directives, repeated. See **State v. Dixon**, 70 S.W.3d 540, 550 (Mo.Ct.App. 2002) (finding that the fact that the complained-of comments by prosecutor were isolated and not extensive mitigated against any conclusion that the comments, although improper, were miscarriage of justice).

Not only was appellate counsel's decision not to raise the prosecutor's remarks not below the reasonable standard of competence, there is no reasonable probability that the result would have been different absent the omission. The comments by the prosecutor related to the question of how Ward came to be identified as one of the two assailants. This identification was irrelevant to the identification of Petitioner as the other of the assailants.

Petitioner's third ground is without merit.

Ground Four: Ineffective Assistance of Trial Counsel (Jury Question). In his final ground for relief, Petitioner argues that trial counsel should have objected to the court's response to the jury's inquiry about whether they could consider the failure of Marvin Owens to testify. The court's response was to give the jury Missouri Approved Instruction-Criminal 3rd 302.01.

"The right to effective assistance of counsel 'is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process.'" **Smith v. Rogerson**, 171 F.3d 569, 572 (8th Cir. 1999) (quoting Kimmelman v. Morrison, 477 U.S. 365, 374 (1986)). "'The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [relevant proceeding] cannot be relied on as having produced a just result.'" **Jackson v. Gammon**, 195 F.3d 349, 354 (8th Cir. 1999) (quoting Kellogg v. Skon, 176 F.3d 447, 452 (8th Cir. 1999)) (first alteration added; second in original). "Only reasonable competence, the sort expected of the ordinary fallible lawyer, is

demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (internal quotations omitted). Moreover, "[t]here is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy." **Garrett v. Dormire**, 237 F.3d 946, 949-50 (8th Cir. 2001) (alteration added).

To establish that counsel's lack of competence violated the Sixth Amendment, the petitioner must show that counsel's performance was deficient and prejudicial. **Kellogg**, 176 F.3d at 452. To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**, 181 F.3d 970, 971 (8th Cir. 1999) (quoting Strickland, 466 U.S. at 687). To establish prejudice, a petitioner must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Id.** (quoting Strickland, 466 U.S. at 697). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" **Carroll v. Schriro**, 243 F.3d 1097, 1100 (8th Cir. 2001) (quoting Strickland, 466 U.S. at 694). The burden of showing a reasonable probability is the petitioner's. **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992).

The question of prejudice from counsel's performance need not be reached if the performance was not deficient. See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998). Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice. See **Strickland**, 466 U.S. at 697;

**Hoon v. Iowa**, 313 F.3d 1058, 1061 (8th Cir. 2002); **Siers v. Weber**, 259 F.3d 969, 974 (8th Cir. 2001).

In Missouri, "[a] trial court commits error when it gives an instruction that *does not* comply with the Missouri Approved Instructions (MAI) or the accompanying Notes on Use[.]" **State v. Robertson**, 182 S.W.3d 747, 757 (8th Cir. 2006) (alterations added) (emphasis added). Accord **State v. Sours**, 946 S.W.2d 747, 750 (Mo.Ct.App. 1997). In response to the jury's question, the court gave them MAI-CR3d 302.01, reading, in part, that it was the jury's "duty to determine the facts and to determine them only from the evidence and the reasonable inferences to be drawn from the evidence." The Notes on Use for this instruction caution that "no other or additional instruction may be given on the believability of witnesses, or the effect, weight, or value of their testimony." MAI-CR3d 302.01 Notes. Far from counsel's failure to request an alternative being a deficient performance, such a request would have been error had it been granted. Petitioner's fourth ground is without merit.

Additional Evidence. In a separate pleading, Petitioner requests funding to have the Michigan jacket tested.

"[W]hen a habeas petitioner 'has failed to develop the factual basis of a claim' in the state courts, the federal district court may not hold an evidentiary hearing unless the applicant shows that the claim relies on "a factual predicate that could not have been previously discovered through the exercise of due diligence" and that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for

constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.'" **Osborne**, 411 F.3d at 915 (quoting 28 U.S.C. § 2254(e)(2)) (alteration added). "A failure to develop the factual basis of a claim in state-court proceedings is established, and the restrictions of § 2254(e)(2) apply, when 'there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel.'" **Id.** (quoting <u>Williams v. Taylor</u>, 529 U.S. 420, 432 (2000)). <u>Accord</u> **Cox**, 398 F.3d at 1030. If a petitioner fails to establish that the "factual predicate that could not have been previously discovered through the exercise of due diligence," the court need not reach the question of whether the underlying facts would have had an exculpatory effect. **Osborne**, 411 F.3d at 916.

At the very least, Petitioner knew of the State's possession of his jacket by the end of the first day of trial. He did not request to have the jacket tested then, nor did he request to have the jacket tested during the post-conviction proceedings. "In general, the time to gather evidence is during the state court proceedings." **Tunstall v. Hopkins**, 306 F.3d 601, 611 n.5 (8th Cir. 2002). His knowledge of the jacket's location during those proceedings is fatal to his current request to have the jacket tested. <u>See</u> **Clay**, 367 F.3d at 1002 (finding that petitioner's failure during the state post-conviction hearing to build an adequate factual record about what three witnesses saw was fatal to his claim that the late disclosure of the witnesses' affidavits violated his constitutional rights).

Because Petitioner has failed to establish the first prerequisite for adducing additional evidence in this § 2254 proceeding, the Court need not address the second

element. The Court notes, however, that the lack of any exculpatory value to the jacket was discussed above in the context of Petitioner's <u>Brady</u> claim.

## <u>Conclusion</u>

For the foregoing reasons, Petitioner's§ 2254 claims are without merit or are procedurally barred. Accordingly,

**IT IS HEREBY ORDERED** that the Attorney General of Missouri, Jeremiah W. Nixon, is added as a Respondent.

**IT IS FURTHER ORDERED** that the 28 U.S.C. § 2254 petition of Jerome Owens is **DENIED** without further proceedings.

An appropriate Judgment shall accompany this Memorandum and Order.


/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of April, 2006.